your honors may it please the court my name is Nicholas Hamilton I'm an attorney for appellant Kevin Smith this case involves an appeal from a dispositive relief that was granted at the district court level and in a employment discrimination claim to summarize the case Kevin Smith alleged that he was the victim of disparate treatment in terms of his dismissal and reinstatement there are four issue or four main areas that I'm going to negligent training and supervision claim the district court ruled that any breach of duty with regard to hiring training and supervision of supervise a state climber yes your honor it's a state claim yes your honor I can do that if you'd prefer well unless if you think that you want to concentrate on the state claims that's fine no I don't want to discourage you but I thought you started out your remarks by saying that this is an employment discrimination claim and I talk about yes your honor and the the negligent training and supervision claim is related to the employment discrimination claim and I'll get into that later your client was employed by UPS yes you're right and he got into an altercation with another employee yes your honor and the policy of UPS at the time was to this is a physical altercation correct yes your honor it wasn't just shouting at each other they got in a fight right yes your honor we can see that it wasn't UPS's policy at the time that in those to achieve reinstatement yes your honor and the board in this instance consisted of three representatives of the Union and three representatives of UPS correct yes your honor and they determined that in this altercation your client was the aggressor and the other individual was less the aggressor they denied your client reinstatement but granted it to the other individual correct yes your honor tell us what's wrong with all of that well it's not necessarily in the nature of the composition of the panel or the process by which the employees grieve their terminations are reinstated you have to in fact look at the uniformity of outcomes relative to virtually everyone that was dismissed under these circumstances up until Kevin Smith prior to Kevin Smith on the basis of discovery responses that were provided to us there were five employees who were terminated and then reinstated by UPS for engaging in unprovoked assault on the workplace while on duty in the previous ten years all five of those individuals who had their jobs reinstated were were non-African American Kevin Smith was the first employee who was to have his job not reinstated there's another or not there was another African American employee Stephen Easler who was also terminated and he was not reinstated as well did your client raise this before the joint union management panel he did not complain about he did not argue about the disparate treatment with regard to reinstatement at the time in all fairness to him he was not aware that he was not going to be reinstated so he was not aware at the time that he was being we know their racial makeup Kevin Smith's representative Joseph Ray he is Caucasian your honor and the other two union representatives and upon information belief your honor I believe if memory serves the representative for UPS was Richard Quebec to my knowledge mr. Quebec is talking about the panel the board the panel oh the panel I'm unaware your honor of the racial makeup is that in the record not to my knowledge you're on then you can move right along and so even the council let me ask you a question if it's judge Gould if I could just to clarify do I understand correctly that your client does not contend that the title 7 disparate treatment or discrimination in here's and is being terminated but rather that the discrimination is that he wasn't reinstated the disparate treatment your honor is is evident in the reinstatement of non-african-american employees yes your honor so so to answer the judge's question your complaint is failure to reinstate yes your honor yes your honor that that's accurate and then do you do you concede that the termination after the fight was that that was okay I guess we would have to your honor it's hard to argue that the terminations of both Johnny Lamos and Kevin Smith were racially motivated in that they were different protected classes and they were terminated at the same time however the if you if your gripe is about the reinstatement what significance if any is there in the fact of of other african-americans being reinstated after mr. Smith's case does it in terms of the timing of those cases relevant or not well your honor Kevin Smith was terminated in December 2007 he filed his charge of discrimination in May 27 2008 the other three african-american employees who were reinstated Marquis Johnson Alton Williams and simply is it what is there any significance to the fact that after your clients problems that they reinstated other african-americans here is there any significance to that you can say yes or no yes your honor there is significant and we believe it is significant because from the time that Kevin Smith filed his charge of discrimination on May 27 2008 UPS was on notice of these claims of after the charge of discrimination was filed containing these types of allegations all of a sudden we have three reinstatements of african-american employees taking place where three employees being reinstated after they were terminated in December 2008 whenever no african-american employees had had their jobs reinstated any time in the previous 10 years okay the three african-american employees who reinstated after Kevin Smith filed his charge of discrimination are are not valid comparators because it's under the circumstances it looks as if UPS was merely trying to cover its tracks if you will first he said it has significance now you're saying it's not valid so it confusing I meant that it has no significance to the nature of who Kevin Smith can validly compared to it doesn't upset the applecart with with relative to who he can compare himself to making out his disparate treatment claim we can exclude these other three on the basis that it looks like they're reinstated in order to cover up the wrongdoing on the part of UPS as the argument counsel let me get your attention focused just a moment on your claim of lack of a claim of negligent supervision and training the state law claim there wouldn't be church there's no no jurisdiction on that if the title seven claim fails right if the preemption claim for the preemption relates to yes your honor they're jumping ahead in responding in responding his question is is that the state claims standing alone would not provide a federal court with jurisdiction no your honor they would not there either purely state tort claims was that your question judge Gould that's right yeah and with regard to the the issue of preemption the judge the plaintiff's argument is that it's a negligent training and supervision claim relates to the training and supervision of supervisory personnel and we argued that since we have the affidavit from John Filipinas that states that the collective bargaining agreement does not cover management personnel then that's then the claim for negligent training and supervision is not inextricably intertwined with the contract the court disagreed and that's of course one of the district courts disagree we fully aired and that's one of the reasons that we're here are you saying that the action that the FUPS was to respond properly and correctly and legally if you will to the complaint of lack of supervision that this would apply exclusively to management level personnel not covered by the CBA yes your honor because it would deal with their responses to these these issues that can lead to racial discrimination may I go back to the federal claim one second just to ask you there was a problem between your client mr. Smith and mr. Lemos previously mr. Smith had made complaints about mr. Lemos that is correct your honor in those complaints if you know were there any allegation of racial treatment or the treatment on account of race I didn't really brief this in particular and it sounds what the record says if you know whether the record deals with there's something about Mexican mafia is that in the complaints in the record about Kevin Smith being victimized by a group that he referred to as the Mexican mafia and unfortunately he didn't come out and say that he felt that his rights were being violated in violation of title 7 but he did make the complaint that he was being harassed by individuals who he said called themselves the Mexican mafia Lemos being one of them but did he say they were doing that because he was african-american in all candor your honor I cannot point to any part in the record where he complained to management and said that I am being harassed on the basis of my race as an african-american would his complaint have been that he was harassed because he was not Mexican well I would be speculating your honor I can only and I can only talk about what is indicated in the record and that he did complain about being harassed by a group that he called about him that call themselves the Mexican mafia I thought he was saying he was being harassed if I could just state this colloquially because he wouldn't go along with improper practices that some of the other the drivers in the Mexican mafia were doing yes he did complain about numerous practices that he called corruption particularly in a package and I believe that it would be accurate to say that some of the animosity that arose between the two of them dealt with his apprehension of these practices that he considered to be corruption but being that I have two minutes left your honor if it please the court I wish to reserve the remainder of my time for good morning your honors and may it please the court I'm Anthony Hall on behalf of the United Parcel Service the appellee in this case I will start by addressing the discrimination issue and I'd like to start by addressing two of the prima facie elements which haven't been discussed so far I think that they are important because they are independent basis upon which this court can affirm the district court's decision and the first prima facie element I think bears particular attention is that different people in a different race group were treated differently in other words similarly situated people were not treated the same as the element in this particular case there is no evidence whatsoever of people being treated differently in similar situations particularly with regard to the panel which as we just heard was admitted in the briefing and admitted here at oral argument is the crux of the discrimination case there is no discrimination with regard to the termination everybody who is involved in the termination of every statement that's correct your honor we are talking about reinstatement by the panel and the panel is that six-member group history isn't there of what kinds of reinstatements are made by the panel and I understand it tell me if this is wrong that reinstatement has occurred in most if not all of the cases where the two disputants have reconciled yes your honor that's been one of the significant factors that has weighed in favor of the panel members deciding that they would let them come back and the rationale makes sense if they've reconciled that's the historical fact that people who have reconciled have been reinstated that is correct your honor those who have reconciled so that the fact that Mr. Lemos refused to accept the apology and the willingness to reconcile by Mr. Smith is what caused the failure to reinstate no your honor that there's a number of reasons for that first that was never presented to the panel and we have to focus on what the panel knew because that's when they're making a decision they were never told hey I try to reconcile but Mr. Lemos won't what they were told is he's willing to reconcile but they have not reconciled there is nothing that indicates in fact the record is the opposite which he did not mention that Mr. Lemos was at fault that's a new allegation that's been brought up after no I'm not saying he's at fault I'm talking about they were told that he was willing to reconcile but there had not been any reconciliation that is correct so the panel was faced with a aggressor who had not reconciled with the person that he had lied in wait for although he has he was willing to reconcile there had been no reconciliation that's correct he had not Mr. Lemos the record is actually vacant as to what Mr. Lemos said regarding reconciliation his presentation to the panel focused on the fact that he was attacked and he was the victim when he came walking out through the guard shack mr. he said nothing up or down about willingness to reconcile correct to the panel as far as the record shows as far as the record shows that's correct the plaintiffs have failed to establish anything about reconciliation in the record and that was their duty if they're going to attempt to show any kind of difference the panel determined that mr. Smith was the aggressor in this altercation yes your honor that was specifically testified by mr. Ray and there was a number of things in the record that specifically stipulated to excuse me your honor that's how the union presentation was that mr. Smith agreed that he had been the aggressor your honor that is the presentation that was made and that's a particular point that I think bears correcting in the record to make sure the judge simply said that both sides agreed before the panel that Smith was the aggressor there's no dispute about there's no dispute about that exactly your honor in fact one of the record on appeal statements that he made to the panel that I think is very particularly important is he specifically kept being asked why did you go home and then come back and wait for him to walk through the guard he kept saying I wanted to settle things with lamos well what do you mean by that I want to settle things he then quoted the Bible book of James and said I wasn't gonna let the Sun go down with my without Sun go down upon my wrath that's what he said that's in the record at ROA 486 he clearly admitted to the panel that he was not gonna go down go to bed that night without his wrath being reckoned upon and what's your client's position on the state law claims the position on the state law claims your honor is a number of different reasons the first thing I would point out to the court no I mean state the position what is your client's position with respect to the state law claims are they preempted by section 301 oh with regard to preemption yes yes they would be they would be present preempted not speaking well and the reason the primary reason for that is to focus on the nature of the claims that they are bringing the nature of the negligence claims that they're don't understand how they have standing to assert in the first place and negligent training as to mr. Kubitschek the negligent training is alleged and the supervision is alleged to be with regard to discrimination issues the discrimination issue only occurred by the admissions of the appellants at the panel level the panel is post termination it only exists because of counsel if I could interject a question for you I thought his negligent training and supervision claims related to the what he claimed was the course of harassing conduct earlier that is the Mexican mafia's harassing me because I won't go along with corrupt practices and I complained to my supervisor miss Martinez that I didn't get anywhere so they were negligent in training of supervisors and in supervising them so why does it if that's if I you know I might have misstated it but if that's the direction of of his state law claim why does that claim require interpreting a collective bargaining agreement your I don't believe that that is their claim but if that is their claim that is even more closely related to the collective bargaining agreement because the things he's complaining about called corruption are all specifically tasks and duties assigned pursuant to the collective bargaining agreement it's all about how they do it and how it's managed and how they're trained with regard to those tasks every single one of them deal with the collective bargaining agreement further if he had a complaint about corruption regarding those duties or what was happening out in front he had an obligation and a mechanism to file a grievance about that conduct specifically covered within the grievance project would be his ability to complain about those things in fact he mentioned that he talked to a supervisor about it that is clear admission that the supervisor is the person who he's supposed to go to again why the so those claims are even more closely tied to the collective bargaining agreement then would be the appeal panel claims which is what I understand the claims to be because the only negligent training that they identified and your honor this is why I understand their claims to be different the only training that they allege to be lacking is discrimination training with regard to mr. Kubitschek there is no alleged training or supervision specifically lacking with regard to any specific manager outside of that so that record indicates that the training that's lacking allegedly is discrimination training the only discrimination came from the panel the panel is a hundred percent a creature of the collective bargaining agreement its standard comes from the collective bargaining agreement it exists only because the collective bargaining agreement and in fact is post termination and that's a very the alleged discrimination that they're claiming here is post termination it's not while he was employed the termination was done the only basis here is that what the complaints is or where do you get those facts from which facts wrong that that's the only failure to train because that's that's the only fact that has been identified identified by whom where by the by the appellants the plaintiffs and the district court proceedings and in the record and the argument that they have made for lack of training the only argument that they've made for lack of training with evidence is that the supplement to the interrogatory indicating the training of mr. Kubitschek lacked the specification that he was trained as to harassment that's the only argument that was made at the district made us to harassment that would get through this not that they were trained as to their performance at the as a result of the board but they weren't trained how to deal with harassment which was occurred well before that we're dealing with two different things your honor the record establishes that the other managers were trained in fact interrogatory number 10 specifically says here's the training for managers the only manager they've trained is mr. Kubitschek and that's because of the error in supplementing the interrogatories so I would have to disagree with what your honor just said because the record doesn't support that let's suppose that someone like mr. Smith this hypothetical question goes to state court in Nevada and said I used to work for UPS I'm no longer working there my claim in Nevada State Court has nothing to do with the circumstances of my leaving the company but while I was there there was this atmosphere of corruption and discrimination and it resulted from managers of that UPS particular UPS office not being adequately trained and not adequately training others in discrimination and supervising and detecting unlawful activity would that be a viable state claim no your honor for several reasons first as I've already discussed it would be preempted so let's just put preemption aside for the moment would that be a valid state claim no your honor for why not because there are a number of principles that prohibit it the first is all of the Nevada discrimination cases excuse me the Nevada negligence cases have required a Nevada Supreme Court has repeatedly supported the economic loss doctrine which again is one that says if there's no physical injury your damages are limited to economic loss under contract theories so there are two strong lines of cases that say you cannot have a negligence claim without a physical injury so that's the first reason why that claim could not survive in Nevada the second reason why that claim could not survive in Nevada is because it's taking a statutorily created remedy discrimination under Nevada NRS 613 which is an intentional discrimination standard and it's taking it and saying it's going to now recognize a newly created duty under common law that can impose liability for negligence the Supreme Court case of Chavez specifically departed from California on this issue they were dealing with a they specifically said unlike California they said in Nevada there is no public policy against discrimination there's only a statutory remedy as a result we will not recognize a wrongful termination public policy claim they refuse to recognize it there is very little difference between refusing to recognize a public policy no common law duty and no common law duty for a statutory obligation which has an intentional standard and limited itself with regard to remedies and with regard to exhaustion all of those things are thrown out the window if the Supreme Court were to go and recognize a brand new case excuse me a brand new duty regarding discrimination as a result counsel aren't you getting into the merits of of his negligence supervision or training claim under state law that is if if it's not preempted and we said it should go to state court assuming you want on title seven but we thought the court erred in finding those state court claims preempted then what would be the procedural result wouldn't we send it back to the district court affirming in part and reversing in part and telling the district court to dismiss the state law claims without prejudice to their being brought in state court and then in state court UPS could make all the arguments you just made I suppose but I don't see how they but I don't see how those arguments go to preemption you're missing something your your honor that would be a procedural method by which this court could deal with that situation however I do believe that there's a strong preemption argument the preemption issue comes from the collective bargaining agreement and again we have to look at the nature of the claims if the claim is corruption that is his daily duties the corruption he mentioned about was not filling up gas not taking packages and leaving packages so it caused him more work to do those are all strictly within the course and scope of the collective bargaining agreement so if the complaint about negligence is not dealing with the corruption as he called it that is clearly within the scope of the collective bargaining agreement and therefore preempted if the claim for negligence is negligent training as to discrimination we have the same results because that only came about from the the collective bargaining agreement thank you thank you counsel as part of your further argument could you just tell me from your clients perspective where are we procedurally if we decide to affirm the but say that the preemption conclusion was incorrect what then do we do well on that basis your honor I would request a believe that we should remand to the state court level unless of course the the district court feels that it needs to exercise its discretion to retain jurisdictions over the purely state claims I thought it couldn't have jurisdiction on the state law claims if the title 7 was gone well that might be one maybe it can maybe it has discretion to keep that and all can your honor I have to acknowledge that and to my based on my experience the district court would likely have the discretion to retain the the state law claim given the advanced and given the advanced nature of this case and the issue of judicial efficiency I believe that would be within the district court's discretion to do so your honor just touching real quickly on the issue of the the facts being undisputed UPS goes to points off that Joseph race position statement said that the facts were Joseph rated UPS his own position statement gives a conflicting version of the events and also it even says that they were both engaged in unprovoked assault which is a logical impossibility thank you your honor now you say that this statement of undisputed facts submitted by the Union I'm sorry it's the position statement that's ROA 846 that's a position statement by the Union on behalf of whom is that not on behalf of they were representing Kevin Smith yes your honor the Union was representing Kevin Smith and the position statement was their position statement on his behalf yes your honor and did he disagree with any of the things in the position statement to my knowledge not vocally at the time however I say not vocally how did he do it in writing I'm not aware of any way that he that he contradicted Joseph race position at the panel meeting your honor well you know I mean there are some problems with all of this but the Union represented both of these individuals in the same proceeding yes your honor and was it the same representative who represented them both yes your honor and there was no between the two no what I mean is that well I suppose that doesn't have too much to do with the outcome although it might have to do with a different type of suit that could have been brought all right thank you thank you your honor judge Reinhardt could we take a brief recess please before the next case yes the court will take a brief recess before the final case in the morning
judges: Reinhardt, Hawkins, Gould